CHARLES H. WORSTER *vs.* CHESLEY W. STONE & others.

Suffolk. March 12, 1914. — May 20, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & CROSBY, JJ.

*Agent*, Commission for procuring sale.

More than one half of the capital stock of a corporation was held under a voting trust and the remaining stock, which was called treasury stock, was to be disposed of to provide working capital. An agent was employed in behalf of the corporation to make sales of treasury stock and was promised a commission of twenty per cent upon the selling price. The agent had interviews with a potential purchaser and gave him demonstrations of the operations of certain machines which the corporation had been organized to manufacture, in order to induce him to buy treasury stock. As the result of these

interviews and demonstrations the purchaser refused to buy any treasury stock, but wished to buy shares of the trust stock, which were not on the market. Thereupon the potential purchaser entered into negotiations with the officers of the corporation which resulted in his buying four hundred shares of the trust stock. *Held,* that the agent employed to sell the treasury stock had earned no commission on the sale of the trust stock, and that in an action brought by him for such a commission he was not entitled on these facts to go to the jury.

CONTRACT against Chesley W. Stone of Lynn and six other persons, the declaration alleging that the plaintiff was the assignee under an instrument in writing of one Wallace N. Wright and that the defendants owed him as such assignee the sum of $4,000 with interest from January 1, 1911, this being the amount of a commission of twenty per cent earned by Wright upon the sale by him of four hundred shares of the capital stock of the American Textile Machinery Company of the par value of $100 a share to one Joseph F. Caunt for the price of $20,000, and the defendants being the officers and directors of that corporation. Writ dated June 29, 1911.

In the Superior Court the case was tried before *Fessenden,* J. It was conceded by the defendants that no broker other than Wright was employed by the American Textile Machinery Company to sell stock, that each one of the defendants sold to Caunt a portion of his rights under the voting trust which is described in the opinion, that the total of the rights so sold by all the defendants was equivalent to four hundred shares of stock, and that the total payment therefor by Caunt was $20,000. At the close of the plaintiff's evidence, which is described in the opinion, the defendants raised the points that, upon the pleadings and the evidence, they had not employed Wright, that he had not earned any commission, and that, if any action could be maintained, this action could not be maintained against these defendants jointly or any of them. The defendants asked the judge to rule that this action could not be maintained; and the judge, after hearing the counsel for the respective parties, ordered a verdict for the defendants. The plaintiff alleged exceptions.

*C. F. Eldredge,* (*H. Caverly* with him,) for the plaintiff.

*H. T. Lummus,* for the defendants.

BRALEY, J. The plaintiff has succeeded by force of the assign-

ment to whatever rights his assignor, Wallace N. Wright, had to compensation. R. L. c. 173, § 4. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461.

It is apparent from his undisputed testimony that Wright was employed by the corporation to make sales of its treasury stock from time to time at a price to be designated by the company, for which he was to receive a commission of twenty per cent of the selling price. But it is also uncontroverted that the defendants, who with himself constituted the board of directors, held more than one half of the capital stock under an agreement in trust, to vote on it, to receive the dividends, and after deducting the expenses of the trust, to pay the balance proportionately among the certificate holders representing the interests of the stockholders who had formed the trust. The assignor knew of this division as well as that the trust stock was not on the market, while the treasury stock must be disposed of to provide working capital. It was with this understanding, and under his contract of employment as the jury could find, that he solicited one Caunt to invest in treasury stock. The interviews shown by his own evidence which took place between him and the defendant Frank E. Richards, vice-president and manager of the company, and his demonstrations to Caunt of the operations of the machines the corporation had been organized to manufacture were all for the sole purpose of inducing Caunt to purchase treasury stock. It is not even contended to the contrary by the plaintiff. It appears, however, that these efforts were fruitless, for Caunt declined to buy unless he could purchase trust stock which would give him the right of participation in the corporate management. But as Caunt finally bought four hundred shares of the trust stock, which were transferred from their respective holdings by the defendants in accordance with the provisions of the trust agreement, the plaintiff contends that a commission on this sale at the same rate as if it had been treasury stock had been earned.

The evidence at most goes no further than to show that during the negotiations the purchaser through information furnished by Wright knew of the different classes of stock, and, if Wright was instrumental in introducing the purchaser to Richards, it was only with a view to the actual sale of treasury stock for which he had been employed. It is insufficient to ground a claim for a com-

mission, that the customer was able and willing to buy any part of the trust stock if it could be procured. *Loud* v. *Hall*, 106 Mass. 404, 407. *Dowling* v. *Morrill*, 165 Mass. 491. *Fitzpatrick* v. *Gilson*, 176 Mass. 477, 478. *Munroe* v. *Taylor*, 191 Mass. 483, 485. The subsequent dealings by the defendants either jointly or severally with Caunt were on the plaintiff's own showing wholly independent of what Wright previously had done, and the case at bar is not one where the principal goes behind his agent and deals with the proposed customer to escape payment of a commission as in *Cadigan* v. *Crabtree*, 186 Mass. 7. The plaintiff having failed to prove any joint or several contract, either express or implied, to pay a commission for the sale of the trust stock, the verdict for the defendants was rightly ordered, and the question of misjoinder need not be considered.

*Exceptions overruled.*